COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

CHYNA ROXANNE REED

v.      Record No. 1514-17-3

ROANOKE CITY DEPARTMENT OF
  SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
APRIL 17, 2018

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

(Matthew Dunne, on brief), for appellant. Appellant submitting on
brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Valeria L. Cook, Guardian *ad litem* for the minor
children, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.


Chyna Roxanne Reed (mother) appeals the order terminating her parental rights to her two

youngest children. Mother argues that the trial court erred by holding that (1) the evidence was

sufficient "to sustain a finding that the parental rights of [mother] be terminated;" and (2) the

termination of mother's parental rights was in the best interests of the children. Upon reviewing the

record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm

the decision of the trial court.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

The Roanoke City Department of Social Services (the Department) first became involved with mother and her family on January 9, 2014. At the time, mother was pregnant and homeless. The Department assisted mother in obtaining housing, and it provided her with bus passes and food cards.[1] In May 2014, mother gave birth to one of the children who is the subject of this appeal. The child was born substance exposed and failed a hearing test at birth. The Department assisted mother with scheduling appointments for the child. Mother missed several appointments and did not reschedule them.

On March 3, 2015, the Department received a report from the Roanoke City Police Department. The police had found mother and the child outside of a Food Lion. Mother had left the child in the care of a stranger while she "went to the restroom for an extended period of time." When the police arrived, mother was "semi-coherent" and told the police that she had "mushed-up" Suboxone and injected it. The police found two syringes on her person. Mother was transported to a hospital, and the child was placed in the paternal grandmother's care.

Mother did not maintain contact with the Department. The Department received allegations of domestic violence between mother and the child's biological father. The Department closed its prevention case on July 20, 2015, since mother was no longer complying with services.

On July 21, 2015, the Department received a complaint that mother was cooking methamphetamine in her mother's house and that drug paraphernalia was within the child's reach. On July 23, 2015, the Department visited mother. Mother denied cooking methamphetamine, but admitted that she had used heroin within the previous three weeks. She also told the Department

---

[1] Mother's two youngest children, who are the subject of this appeal, were not born at the time of the Department's first involvement with mother.

that she used Suboxone and Adderall if she could not obtain heroin. The Department referred mother for substance abuse treatment. On August 4, 2015, mother tested positive for buprenorphine, opioids, and heroin. On August 7, 2015, the Roanoke City Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order, and the Department placed the child in foster care. On September 14, 2015, the JDR court entered an order finding that the child was abused or neglected.

In February 2016, mother gave birth to her youngest child, who also is the subject of this appeal. The child was born substance exposed. Due to the Department's concerns about mother's housing situation and substance abuse issues, the child was removed from mother's care and placed in foster care on February 5, 2016. On March 10, 2016, the JDR court entered an order finding that mother's youngest child was abused or neglected and at risk of being abused or neglected.

The Department filed foster care plans with several requirements for mother. The Department required mother to obtain and maintain stable housing and employment, complete a parenting class, and complete a domestic violence assessment and class. The Department also required mother to remain substance free and participate in a substance abuse treatment program. Furthermore, the Department planned to arrange visitation between mother and the children and required her to participate in the visitations.

Mother did not comply with most of the Department's requirements, although she did complete the parenting class after her second attempt. She missed the first three domestic violence assessments. She appeared for the fourth assessment and completed the class. Mother was unemployed for most of the time that the children were in foster care. She also did not have stable housing and stayed with friends, her mother, or the father of her oldest child.

In order to address mother's substance abuse issues, the Department referred her to a program at the Blue Ridge Behavioral Health Care. She was discharged from the program three

times for excessive absences. On June 27 and July 18, 2016, the Department asked mother to complete a drug screen. On both occasions, mother tested positive for Suboxone, for which she did not have a prescription. On August 2, 2016, the Department asked mother to complete another drug screen, and mother tested negative for drugs on that date.

Mother also failed to maintain contact with the Department and was inconsistent with visiting the children. Initially, the Department arranged for mother to visit with the children weekly for two hours. Mother frequently was late to the visits and missed ten appointments prior to September 17, 2016. Between September 29 and October 24, 2016, mother was incarcerated for a larceny conviction. When she was released, the Department arranged for a visitation on October 31, 2016, but mother did not appear. The Department subsequently learned that mother was hospitalized for a heroin overdose. Mother later called the Department to restart visitation. However, since she had missed three visits in a row, the Department suspended the visits and required her to come into the office to meet with a social worker. The Department scheduled a meeting for mother to meet with the social worker on December 14, 2016, but mother did not appear. The Department did not hear from mother until March 23, 2017, when the parties appeared before the JDR court for a hearing on the termination of mother's parental rights.

On March 23, 2017, the JDR court terminated mother's parental rights to her two youngest children. Mother appealed to the circuit court. The parties appeared before the circuit court on June 22, 2017. The Department presented evidence that the children were doing well in foster care. They are placed together and very attached to the foster parents.

Mother testified about her current situation. She explained that since summer 2016, she has been living "on and off" with her seven-year-old child and his father. Mother stated that she had been working for a temporary service for approximately a month and a half prior to the final hearing. She explained that she works the night shift, for four days a week, at the Volvo plant doing

cleaning work. Mother denied that she had not maintained contact with the Department and said that she left messages for the social worker, who did not return her calls.[2] Mother also testified that she is no longer taking Suboxone and has been clean since her overdose in October 2016.

After hearing the parties' evidence and argument, the trial court found that it was in the children's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). The trial court also approved the foster care goals of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother argues that the circuit court erred in terminating her parental rights and asserts that termination is not in the best interests of the children. Mother emphasizes that she completed the parenting class and domestic violence class. She also notes that she found employment with a temporary agency and was saving money for permanent housing. Lastly, she states that she has been clean of illegal substances for approximately a year.

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months

---

[2] The social worker testified that after the March JDR court hearing mother left a voicemail message with a number, but when the social worker called the number, she was unable to leave a message.

from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Since 2014, the Department provided numerous services to mother. Despite these services being offered to mother, the trial court found that mother had not complied with the Department's "very reasonable requirements." The Department referred mother to several substance abuse treatment programs, but she did not complete any of them. However, the trial court accepted mother's statement that she was clean and no longer using Suboxone.

The trial court also found that mother was unable to remedy the conditions that led to the children being placed, and remaining, in foster care. The trial court noted that mother still did not have independent housing. Inadequate housing was one of the reasons that the Department first became involved with mother and her family in 2014. Furthermore, although the Department arranged for weekly visitation between mother and the children, mother frequently was late to the visitations. The trial court explained that it was "detrimental" to the children to wait and see if mother was going to appear. Then, she missed several scheduled visitations, and the Department was forced to suspend her visitations. The Department explained to mother that the visitations could restart, but that she had to come in and meet with the social worker first. Mother missed the appointment. Mother had not seen the children since September 2016. The trial court stressed that mother had not "tried to at least maintain contact with the children" since September 2016.

At the time of the final hearing, one of the children had been in foster care for almost two years, and the other child had been in foster care for approximately sixteen months. The children were doing well and thriving. At the conclusion of the hearing, the trial court told mother that the children "need to be able to move on and so do you." "It is clearly not in the best interests of a

child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Based on the totality of the record, the trial court did not err in finding that the evidence was sufficient to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2) and that termination was in the children's best interests.

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.