UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Retired Judge Bumgardner*

STEVEN WHITING

v.      Record No. 0401-18-1

GLOUCESTER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION**
PER CURIAM
JULY 17, 2018

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Ray W. Grubbs, Judge Designate

(Charles E. Haden, on brief), for appellant.

(Andrea G. Erard; Brian W. Decker, Guardian *ad litem* for the minor
child; Dusewicz, Soberick & Decker, P.C., on brief), for appellee.

Steven Whiting (father) appeals an order terminating his parental rights to his child. Father

argues that the circuit court erred by finding that (1) it was in the best interests of the child to

terminate his parental rights; (2) the Gloucester County Department of Social Services (the

Department) presented clear and convincing evidence to support a termination of parental rights

pursuant to Code § 16.1-283(C)(1); (3) the Department presented clear and convincing evidence to

support a termination of parental rights pursuant to Code § 16.1-283(C)(2); and (4) the Department

made "reasonable and appropriate efforts to render social, medical, mental health, or other

rehabilitative services to [father] and to communicate with the parent and strengthen the

parent-child relationship." Upon reviewing the record and briefs of the parties, we conclude that

---

* Retired Judge Bumgardner took part in the consideration of this case by designation
pursuant to Code § 17.1-400(D).

** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Father and Carmela Rosell (mother) are the biological parents to a child who is the subject of this appeal.[1] Mother and the child lived with mother's grandmother, while father lived with his mother and sisters when he was not incarcerated. The Department had been involved with mother and the child for several years.[2] Since October 2014, Child Protective Services had received complaints about physical abuse in the home, mother's substance abuse, mother's untreated mental health and suicidal ideations, domestic violence in the home, and the child's inadequate hygiene.

On May 16, 2016, the Department removed the child, who was seven years old, from the home because of concerns that mother's mental health was "very unstable" and that she was suicidal. The Department contacted father to see if he would care for the child to avoid a foster care placement, but father told the Department that he could not care for the child. At the time of the removal, father had been out of jail for approximately one and a half years. He was unemployed and lived with his mother and sisters.

---

[1] Mother has two other children who were removed by the Department at the same time as father's child. However, father is not the biological father to those children, so they will not be discussed herein.

[2] The child previously was in foster care for nineteen months before being returned to mother's care.

On June 7, 2016, father met with the Department to discuss the foster care process and the Department's requirements. Father told the social worker that he had not seen the child very much and that he had had an "ongoing cocaine habit" for approximately twenty years. The Department required father to participate in parenting classes, individual therapy, and substance abuse treatment. Father completed a substance abuse intake appointment, and the recommendation for father was intensive outpatient substance abuse treatment.

On June 15, 2016, father attended a family assessment meeting, where they discussed the recommended services and funding. The Department secured funding assistance for father's parenting classes and substance abuse treatment, but father did not participate in either service. The Department also provided father with housing assistance, but father never followed through with the referrals. In addition, the Department arranged for father to visit with the child twice before he was incarcerated on August 10, 2016, for violating his probation due to ongoing substance abuse. On September 13, 2016, father received a two-year sentence of active incarceration for the probation violation.

On January 31, 2017, the Department visited father in jail to explain that the Department was seeking a change in the foster care goal at the next hearing. The Department encouraged father to speak with a social worker at the jail to see what services he could participate in while he was incarcerated. Father acknowledged that he could have participated in substance abuse treatment programs at the jail, but he chose to work in the galley instead to earn money for his canteen. Father subsequently was transferred to Greensville Correctional Center, and he testified that he was not aware of any services available to him in prison. While father was incarcerated, he and the Department exchanged several letters. Father never indicated that he had completed any services or had a plan for the child when he was released.

On October 19, 2017, the Gloucester County Juvenile and Domestic Relations District Court (the JDR court) terminated father's parental rights.[3] Father appealed to the circuit court.

On January 26, 2018, the parties appeared before the circuit court. The Department presented evidence that the child required "a blend of behavioral, educational, emotional, medical services and support." The child had numerous behavioral problems, including three suspensions, at school. On September 6, 2017, the child was diagnosed with ADHD and prescribed medication. The child received therapeutic day treatment during school and weekly individual therapy for separation and anxiety issues. In July 2017, he had tubes placed in his ear because of repeated issues with his hearing. Due to bowel issues, he also saw a gastroenterologist. Despite these difficulties, the social worker testified that the child had a "really good bond" with his foster mother and looked to her "for comfort and love and support."

Father testified that he had a criminal history that included convictions for breaking and entering, receiving stolen property, perjury, and five probation violations. The probation violations occurred because he failed drug tests, and he admitted that he had used cocaine and marijuana for approximately twenty years. Father indicated that the longest period for which he was not incarcerated was approximately one year. Father testified that he had been incarcerated since August 10, 2016, and his projected release date was May 9, 2018. Father explained that when he was released, he planned to live with his mother and one of his sisters. He did not have a driver's license or a vehicle and would be dependent on his mother for transportation and financial support.

---

[3] The JDR court also terminated mother's parental rights, and she appealed to the circuit court.

After hearing the evidence and argument, the circuit court found that termination of father's parental rights was in the child's best interests. It terminated father's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2).[4] This appeal followed.

ANALYSIS

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Father argues that the circuit court erred in terminating his parental rights because the Department did not prove, by clear and convincing evidence, that he failed to remedy the conditions that led to and continued the child's placement in foster care and that termination of his parental rights was in the best interests of the child. Father further asserts that the Department did not make reasonable and appropriate efforts to provide him with services that would assist him in remedying the conditions that led to the child being placed in foster care. Code § 16.1-283(C)(2) authorizes a court to terminate a parent's parental rights if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the

_____

[4] The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2).

- 5 -

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Here, the circuit court emphasized that the child had never resided with father. When the Department removed the child from mother's care on May 16, 2016, the social worker contacted father to see if he would be able to care for the child, but father stated that he could not do so. After the Department placed the child in foster care, it provided numerous services to father. The Department also arranged for father to visit with the child twice. It provided father with housing assistance, and secured funding for parenting classes and substance abuse treatment. Although father visited the child twice and completed the intake for substance abuse treatment, he did not participate in any other services. The social worker described father as having "a small burst of motivation and then does not have follow through with completing the actual services."

Father was incarcerated from August 10, 2016 through the circuit court hearing. The circuit court held that father's "incarceration was a result of his own actions. And they were primarily actions of failing to follow rules of probation, which in and of itself presents issues." Contrary to father's arguments, the Department was not required to offer him services while he was incarcerated. See Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004). This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. "[A]s long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child." Id. Nevertheless, the Department visited

- 6 -

father in jail and encouraged him to participate in services while he was incarcerated. Father acknowledged that he could have participated in substance abuse treatment classes in the jail, but chose not to do so. The Department also corresponded with him and provided him with photographs of the child.

Considering the circumstances, we find that the Department's efforts were reasonable and appropriate.

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5.

At the time of the circuit court hearing, the child had been in foster care for approximately twenty months. The Department presented evidence that the child had "behavioral, educational, emotional, [and] medical" needs. The Department also explained that the child had a "really good bond" with his foster mother, and the circuit court found that "foster care seems to be working to [the child's] advantage."

The circuit court emphasized that "the longest period of time that [father] has not been incarcerated . . . is about one year" and that father had been incarcerated for "about one-third of [the child's] life." Father had no plans to care for the child. Upon his release from prison, father intended to live with his mother and rely on her for financial support and transportation. However, even before his incarceration, father failed to follow through on the services offered, including housing, parenting classes, and substance abuse treatment. The circuit court found that father "seems to lack any sustained momentum to meet [the child's] needs. And those needs are somewhat demanding. They are behavioral needs, which seem to be very serious, and some medical needs as well."

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003). "[I]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Harrison, 42 Va. App. at 162, 590 S.E.2d at 582 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Based on the record, the circuit court did not err in finding that it was in the best interests of the child to terminate father's parental rights pursuant to Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating father's parental rights pursuant to Code § 16.1-283(C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.